## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  1:22-cv-20242

ASTRID SUAREZ,                                             **JURY TRIAL DEMANDED**

      *Plaintiff*,

vs.

COSTCO WHOLESALE CORPORATION,
ROY A. RODENBURG and YORAM RUBANENKO,

      *Defendants*.

_____/

### <u>COMPLAINT</u>

Plaintiff Astrid Suarez ("**Plaintiff**" and/or "**Suarez**") by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Costco Wholesale Corporation ("**Costco**"), Defendant Roy A. Rodenburg ("**Rodenburg**"), Defendant Yoram Rubanenko ("**Rubanenko**"), and alleges as follows:

### <u>INTRODUCTION</u>

1.      This case is about an employee trapped in a workplace infested with discriminatory intent, facilitated by supervisors, managers and executives of Costco Wholesale Corporation.

2.      Plaintiff Astrid Suarez seeks damages against Costco for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("**Title VII**"), the Americans with Disabilities Act of 1990 ("**ADA**"), as amended 42 U.S.C § 12101 *et. seq*., the Americans with Disabilities Act Amendments Act ("ADAAAA") of 2008, the Florida Civil Rights Act of 1992,

1

§760.01, *et seq.*, Florida Statutes ("**FCRA**"), and, as against all Defendants, the Family and Medical Leave Act 29 U.S.C. § 825.220 ("**FMLA**").

3.      Costco violated Title VII and the FCRA by subjecting Suarez to an intimidating and hostile work environment because of her sex.  For example, a Costco supervisor posted a nude photograph of Suarez on Instagram after Suarez rejected the supervisor's sexual advances. Soon thereafter, Plaintiff's co-workers had seen Suarez's naked photographs, and the general manager—who was holding the photo in front of Suarez—said, "Don't you just want to quit?"  and took zero corrective action. Consequently, Costco's agents began saying things like, "Your vagina looks good in those pants," or, managers messaging Suarez on Facebook, saying, "I can eat you good," or Costco managers soliciting Suarez to participate in three-way sex with the manager's wife—also a Costco manager.  In December of 2020, a Costco corporate executive asked Suarez to describe, with particularity, every instance of sexual acts Suarez in during her employment.  The Costco executive then revealed confidential facts to Costco employees, who began harassing Suarez about intimate details.  Days later, a psychiatrist diagnosed Suarez with Post Traumatic Stress Disorder ("PTSD").

4.      Costco violated the ADA and the FMLA by failing to accommodate Suarez in retaliation for taking FMLA leave following her PTSD diagnosis.  In or around March of 2021, Suarez requested a reasonable accommodation, as provided by her psychiatrist, to work no later than 7 P.M. because her PTSD medication made Suarez groggy at that time.  Costco's Vice President asked Suarez, "How long is this going to last?  Can't you take the medication at a different time?" Then, Costco's General Manager asked, "Do you think it's even accurate?" and then scheduled Suarez's shift not to end at 7 P.M., but to *begin at 7 P.M.*  Costco's Vice President told Suarez, "We should be lucky we don't fire you."

5.     Costco subjected Suarez to a hostile work environment because of her disabilities and because she complained of same.  In or around April of 2021, Costco's agents would say things like, "You're considered trouble because you know too much—we like the dumb employees."  Meanwhile, the entire Costco warehouse knew Suarez filed a charge with the EEOC because multiple employees approached Suarez, asking her for advice regarding accommodations.

6.     Costco failed to promote Suarez on two occasions, after she filed her EEOC charge. Suarez was more qualified than the other candidates on both occasions by Costco's objective qualifications.  As of this filing, Plaintiff still finds herself trapped in a workplace replete with hostility and discrimination.  For example, on or about December 14, 2021, Suarez's manager refused to allow her to leave to take her medication after her psychiatrist had just increased her dosage weeks before.

7.     At bottom, Defendants have damaged Plaintiff, and she is entitled to relief.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action under 28 U.S.C. § § 1331 (federal questions), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and §1367 (supplemental jurisdiction).

9.     Venue is proper in the Southern District of Florida under 42 U.S.C. § 20003-5(f)(3) and 28 U.S.C. § 1391(b) because a substantial portion of the acts or omissions giving rise to this action occurred in the Southern District of Florida.

## PARTIES

10.    Plaintiff Astrid Suarez is an individual woman residing in Miami-Dade County, Florida.

11.    Plaintiff is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

12.     Plaintiff is an "eligible employee" pursuant to 29 CFR § 825.110(a)(1) because she was employed by Defendant Costco for more than 12 months, and Plaintiff was employed for at least 1,250 hours of service during the 12-month period immediately preceding exercising her FMLA rights.  Plaintiff worked 11 A.M. to for at least 50 weeks during 2019-2020, meaning Plaintiff was employed for at least 1,250 hours during the 12-month period immediately preceding exercising her FMLA rights.

13.     Defendant Costco Wholesale Corporation is a foreign profit corporation with locations throughout the United States and internationally, including a store located at 16580 NW 59th Ave, Miami Lakes, FL 33014.

14.     Costco is a membership-only box store offering bulk-sized groceries, electronics, and appliances, and is one of the largest retail companies in the world

15.     Defendant Costco is a "person" within 42 U.S.C. §2000e(a), an "employer" within the meaning of 42 U.S.C. §2000e(b) and 42 U.S.C. § 12111(5)(A) and a "covered entity" within 42 U.S.C. § 12111(a) and 42 U.S.C. § 12111(2).

16.     Defendant Costco is a "covered employer" within the meaning of the FMLA, because, pursuant to 29 C.F.R. § 825.104(a), Costco employs more than 50 employees throughout the current and preceding calendar year within a 75-mile radius of the Miami Lakes location.

17.     Defendant Roy Rodenburg is an individual man who, is believed to be a citizen of Florida.  Rodenburg, at all material times, worked as Costco's "General Manager" at Costco's location in Miami Lakes, Florida.  Rodenburg held direct supervisory authority over Plaintiff, controlling various terms and conditions of her employment.  Rodenburg withheld disability accommodations from Plaintiff and failed to grant her PTSD accommodations following Plaintiff's FMLA leave in December of 2020. Rodenburg retaliated against Suarez after she

requested to work no later than 7 P.M. by scheduling her shift to begin at 7 P.M. in direct contradiction to the doctor's accommodation.

18.     Defendant Rodenburg is a "covered employer" within the meaning of the FMLA because, pursuant to 29 U.S.C. § 2611(4)(A)(ii)(I), because Rodenburg is a "person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."

19.     Defendant Yoram Rubanenko is an individual man who, at all material times, worked as Costco's "Executive Vice President, COO - Eastern Division." Rubanenko held direct supervisory authority over Suarez, controlling various terms and conditions of her employment. Rubanenko harassed and discriminated against Plaintiff because of her disability and medical she took medical leave. When Suarez requested to Rubanenko told Plaintiff, "You should be lucky we don't fire you," after Suarez asked for reasonable accommodations following her FMLA leave for PTSD.

20.     Defendant Rubanenko is a "covered employer" within the meaning of the FMLA because, pursuant to 29 U.S.C. § 2611(4)(A)(ii)(I), because Rubanenko is a "person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."

## <u>ADMINISTRATIVE PREREQUISITES</u>

21.     Plaintiff has complied with all administrative requirements.

22.     On or about April 9, 2021, Plaintiff timely dual-filed a charge of discrimination (Charge No. 510-2021-03589) with the U.S. Equal Employment Opportunity Commission ("**EEOC**"), the Florida Commission on Human Relations ("**FCHR**"), and the Miami-Dade Commission on Human Rights ("**MDCHR**") naming Costco Wholesale Corporation as the Respondent.  Plaintiff checked the boxes for discrimination based on sex, disability, and retaliation.  On or about November 1, 2021, Plaintiff timely filed an amended charge of

discrimination, checking the above-described claims, in addition to checking the "other" box, including discrimination based on hostile work environment and retaliatory hostile work environment.

23.     On or about November 17, 2021, the EEOC issued a right to sue notice.

24.     On or about January 19, 2022, Suarez timely commenced this action within 90 days of the EEOC's notice of her suit rights.

## FACTUAL ALLEGATIONS

25.     Plaintiff Astrid Suarez is a 30-year-old Hispanic woman.

26.     Suarez is a single mother to an autistic child.

27.     Suarez has a record of having attention deficit hyperactivity disorder ("ADHD"), and in December of 2020, Suarez was diagnosed with PTSD, depression, and panic disorder, (episodic paroxysmal anxiety).

28.     On or about September 9, 2016, Suarez began working for Costco as a "Deli Attendant" at its location in Miami Lakes, Florida. In or around September of 2019, Suarez began working for Costco as an "Office Clerk." Then, in or around November of 2020, Suarez became a "Front End Assistant" on the warehouse floor.

29.     Suarez kept to herself and worked for one reason: to provide for her daughter. Nonetheless, Costco subjected Suarez to an unrelenting hostile work environment because of her sex and disability and retaliated against Plaintiff for taking medical leave and requesting disability accommodations.

### Managers Solicit Suarez for Sex, Costco Launches Invasive Investigation, and Disclose the Contents Thereof to Multiple Costco Locations

30.     From the outset of Suarez's employment, Costco and its agents subjected Plaintiff to unrelenting sexual harassment. Indeed, early on in her employment, after

Suarez denied a supervisor's sexual advances, he posted Plaintiff's posted nude photographs of Suarez on Instagram. Later that year, Costco's General Manager, Gricel Morales ("Morales"), said, "Don't you just want to quit?" and made no effort to investigate Plaintiff's harassment complaints.

31.    Costco's agents spread rumors and gossiped about Suarez's personal sex life after a manager circulated a nude photograph of Suarez after she rejected his sexual advances.

32.    Marilyn Calavaro, Costco manager, and wife of Tony Calavaro messaged Suarez on Facebook, saying, "I can eat you good." On another occasion, Mr. Calavaro solicited Mr. Suarez to have a threesome with him and his wife, Marilyn Calavro ("Ms. Calavaro"), one of Costco's Assistant Managers.

33.    Suarez immediately requested a meeting with Morales to report Ms. Calavaro's vile, unwanted sexual advances. However, once again, Morales was uninterested in addressing Suarez's complaints. Indeed, Morales dismissed Plaintiff, telling her, "Don't worry— the account was just hacked … I received a friend request from them as well." Suarez was perplexed. She said, "Usually when an account is hacked it sends you a virus or something … not a message saying, 'I can eat you good.'" Morales was defiant. "Don't worry about it." Hence, as would become a pattern and practice, Morales never conducted an investigation or did anything to stop or prevent further harassment.

34.    Consequently, as a result of Costco's inaction, Suarez was left to confront Mr. Calavaro on her own. When she did, Mr. Calavaro began talking about problems he was having with his wife. Then he said, "Are you interested in going to a swinger's club in Doral?" Suarez was stunned. "Please," she said, "I respect your lifestyle, but leave me out of it. I am not interested."

35.     Suarez faced incessant sexual harassment from additional Costco agents. On one occasion, in or around the Summer of 2020, Suarez's manager, Perkins (last name unknown) began scrolling through photos on Plaintiff's phone, searching for nude photos. When Suarez asked what Perkins was doing, Perkins said, "Oh, it was an accident." Around this time, another manager, Rainer (last name unknown) approached Suarez and said, "Your vagina looks great in those pants."

36.     Around this time Suarez's co-workers began sending her messages from anonymous sources. For example, an unknown Costco agent text messaged Suarez: "[T]old [you] I would get u fire[d]—you really are a fucking dumb bitch."

37.     All of this harassment was taking a serious toll on Plaintiff's well-being. Indeed, in or around July and August of 2020—and after years of sexual harassment perpetrated by Costco and its agents prior to—Suarez was experiencing extreme emotional distress, anxiety, and significant weight loss, weighing a total of 98-pounds.

**Plaintiff is Diagnosed with PTSD as a Result of Workplace Harassment and Hostility**

38.     In or around November of 2020, Costco initiated an investigation to a consensual relationship Suarez had with one of Costco's "Assistant General Managers." Suarez wanted to keep this quiet—especially after what happened with her photographs and the unrelenting harassment that ensued.

39.     Jonathan Shue, from Costco's corporate office headed the investigation alongside Rodenburg. And at first, Shue seemed reasonable. "We're gonna give you a warning," he told Suarez. However, then Shue insisted on asking Plaintiff to describe her sexual encounters in extreme detail, demanding to know the circumstances of each sexual interaction with her manager.

40.     Suarez was scared because of the last experience with harassment and her nude photographs going around—which Shue was aware of.  Suarez said she did not want others to find anything out.  Rodenburg ensured her that would not happen.  Suarez repeatedly expressed her reluctance to share the intimate details and felt harassed and embarrassed.

41.     The next day, the entire warehouse knew about the investigation. Indeed, various Costco managers, supervisors, and employees were aware and discussing Suarez's relationship with the Assistant General Manager. Indeed, one of Plaintiff's co-workers, Shaq (last name unknown) told Suarez, "Everyone knows about what's going on."

42.     People gossiped about Suarez—managers, supervisors, and coworkers—talking about specific intimidate details that they would only know if Rodenburg revealed.  This is in direct violation of Costco's sexual harassment policy guaranteeing confidentiality and proscribes malicious gossiping or interfering with an investigation. Rodenburg spread specific details of the investigation to lower-level employees who had no role in the investigation.   Rodenburg humiliated Suarez and disclosed intimate details of her sexual activity for the purpose of harassing her because of her sex.

43.     Plaintiff then confronted Rodenburg and asked whether there would be consequences for his actions. Suarez noted that the handbook policy states that malicious gossiping or interfering with an investigation results in termination. There were no repercussions.

44.     Shortly after Rodenburg conducted the investigation, he told Suarez she was now on a 3-day suspension. "After that," he said, "we'll decide whether you still have a job."

45.     On or about November 20, 2020, Rodenburg reassigned Suarez from her office clerk position and reassigned her to "Front-End Assistant."

46.     On or about December 1, 2020, Suarez took FMLA leave for about 3 months.

47.     Meanwhile, Costco employees began asking Saurez about sexual rumors following the above investigation.  For example, an employee texted Suarez, saying, "So, apparently you and Jose got caught having oral sex in the vault."  When Suarez said that was not true, the employee said, "Just letting you know what [people] are saying."  The person also said, "Lisa also told me that you apparently also slept with Larry."  When Saurez asked who told Lisa, the person on the phone said, "[People] talk u know that."

48.     Plaintiff's psychiatrist, Jose E. Gamez, M.D. ("**Dr. Gamez**") placed Suarez on medical leave from December 1, 2020 to February 28, 2021. Dr. Gamez made this recommendation pursuant to Suarez's mental health issues and asked Costco to "Please assist Suarez in any possible way." Dr. Gamez had diagnosed Suarez with PTSD as a result of sexual harassment experienced during her employment at Costco.

49.     Plaintiff's second doze of medication, which she takes in the late afternoon, causes grogginess, dizziness, nausea, and sedation.  Indeed, by 7 P.M., Plaintiff begins to lose energy and cannot function properly.

### Costco Fails to Accommodate Suarez Upon Return from FMLA Leave

50.     On or about February 28, 2021, Suarez returned to work. While she was nervous to return, Suarez found that most of her co-workers welcomed her back—especially knowing the hell Costco had put her through.

51.     Suarez soon realized, however, that her supervisors and managers did not share the same enthusiasm.  Indeed, Suarez was met with retaliation, hostility, and discrimination because of her medical leave and her subsequent accommodation requests.

52.     For instance, Alexis (last name unknown) Costco's "Front End Manager" told Plaintiff, "You're considered trouble because you know too much—we like the dumb

employees." Still, Costco's hostility for Suarez's return from medical leave and her medical need for disability accommodations would only become more hostile.

53. On or about March 1, 2021, Suarez provided an accommodation note to Rodenburg and Rubanenko that stated Plaintiff must not work beyond 7 P.M. because her PTSD medication made her drowsy, groggy, and driving home at such time would be unsafe.

54. Rodenburg denied Plaintiff on the spot. "I can't accommodate you because there's seniority and it would seem like preferable treatment." Plaintiff did not understand. "Please," Suarez said, "all I'm asking is for you to meet me halfway." Rodenburg was defiant. He said, "We have plenty of new employees who could replace you." Suarez was dumbfounded. "This is not about other people," she said. "I have rights under the ADA."

55. Suarez then approached Rubanenko to explain that she felt uncomfortable answering Rodenburg's questions. Plaintiff explained that she did not know how to answer them. Then, Rubanenko said, "How long is this going to last?" Suarez could not believe she was compelled to answer such a question … much less from the Vice President of Costco.  She said, "I'm here to work. I feel great. And I'm ready to work." Rodenburg insisted. He said, "But, do you think it's accurate?"

56. Suarez was taken aback. Here she was, after weeks on medical leave—which she had to take to recover from PTSD caused by Costco's unrelenting sexual harassment— and now Costco's Assistant General Manager and Vice President were ganging up on her, harassing her, and questioning whether her medical accommodations were even necessary.

57. Suarez was particularly upset because she knew that Costco treated Plaintiff less favorably than non-disabled employees. Indeed, Suarez knew that Costco had no problems adjusting schedules for her co-workers who were taking college classes, or even those who

requested schedule changes for second jobs. Yet, Costco would not accommodate a disability for Suarez … one that arose because of Costco's failure to correct workplace sexual harassment.

58.     On or about March 2, 2021, Suarez emailed Rodenburg and Jonathan (last name unknown), Costco's Assistant General Manager, and said, "Around 7ish I do start feeling groggy, meaning I get dizzy, nauseous, and extremely tired." Further, Suarez said, "I need to make sure I get home safely without falling asleep behind the wheel."

59.     The next day, on or about March 3, 2021, Rodenburg denied Suarez's accommodation requests because of seniority. Worse, Costco retaliated against Suarez by scheduling her from 7:00 P.M.–11 P.M.

60.     To be sure, any reasonable employee would be dissuaded from requesting an accommodation to work no later than 7 P.M.—even due to the delirium that arising from PTSD medication—if the employee knew her manager would torment her, question whether the accommodation was accurate, ask how long it would last, and subsequently retaliate by adjusting her schedule not to end at 7 P.M., but to begin at 7 P.M. This point is buttressed by the fact that Suarez's reason for her accommodation was so to prevent against crashing her car on the way home … to care for her autistic, special needs child.

61.     Still, Rodenburg was defiant. Later that day, on or about March 3, 2021, he questioned whether Suarez was fit to work—notwithstanding the extensive FMLA paperwork provided to him indicating that she was.

62.     On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you." Here Rubanenko was, the Senior Vice President of Costco's Southeast Region—one of the largest retail companies in the world—blatantly discriminating and retaliating against Suarez for requesting an accommodation.

63.     On or about March 9, 2021, Dr. Gamez provided released Suarez fit to work, with the condition that she work "normal duty—only until 7.p.m." On or about March 10, 2021, Rodenburg emailed Plaintiff, explaining that he was forwarding the accommodation to Laverne (last name unknown) from Costco's integrated leave department.

64.     Finally, Rodenburg approved Suarez's accommodation, assigning her to work from 3 P.M. to 7 P.M. However, Rodenburg called Plaintiff and said, "This is only a short-term accommodation—it's not going to last."

65.     On or about March 25, 2021, Rodenburg provided and instructed Suarez to sign documents indicating that Costco could not accommodate her disability because she had already used all of her available FMLA. Suarez was not asking to take leave, but only to not drive home beyond 7 P.M.

66.     On or about March 26, 2021, Rodenburg announced he was stepping down as General Manager of Costco's Miami Lakes location.

67.     Once Rodenburg left the store, no one else forced Suarez to sign the documents concerning her exhaustion of FMLA … until Costco's new General Manager, Mr. Eddie Maiorana ("Maiorana") began in or around April of 2021.

**Costco Subjects to Hostility, after EEOC Charge, Fails to Promote Plaintiff Twice**

68.     Suarez filed her EEOC charge of discrimination on or about April 9, 2021.  Soon thereafter, employees from multiple Costco locations in South Florida began talking about Plaintiff's case.

69.     In or around late April of 2021, at least a half-dozen of Plaintiff's coworkers began approaching Suarez about advice regarding FMLA and health issues and what they needed to do to obtain an accommodation.  Indeed, Costco's employees had learned about Suarez's EEOC

charge—not from Suarez—but because Costco told them.  Consequently, multiple employees were well aware of Suarez's discrimination charge.

70.     For instance, one employee approached Suarez and said, "I was told you know your shit and not to mess with you."  This resembles the notion from Alexis's comments who told Suarez, "We like the dumb employees."  Around this time, Suarez learned that even employees at the North Miami location knew about her case.  Employees at the North Miami location would say, "Yeah, Astrid's trouble."  On or about May 5, 2021, Suarez's coworker named "Vince" (last name unknown) told Plaintiff that managers at the Miami Lakes store were "trying to find anything they can to fire you."  On or about May 13, 2021, Suarez's coworker, Sam Martinez told Plaintiff, "You're a high-quality employee—they don't like that here."

71.     On or about May 18, 2021, Moe, assistant front end manager, told Suarez the Company is "trying to put you in the deli because of your work hours ending at 7 P.M."  Later that day, Maiorana told Suarez to help in the deli—a task completely unrelated to Suarez's job title at the front end.

72.     On or about May 27, 2021, Suarez noticed another shift: no one would talk to her.

73.     On or about June 17, 2021, for the first time, the Miami Lakes store began a contest for "door audits."  Suarez was listed as "#1 Place" out of the Miami Lakes employees.  She was confused because Costco had never done this before.

74.     Then, on or about June 19, 2021, a supervisor of the store told Suarez to go help in the deli.  Suarez said, "But I'm not wearing slip resistant shoes."  The supervisor then told the Maiorana Suarez said that she did not want to be unsafe.  Then an assistant manager approached Suarez and said she would give Plaintiff coffee if she worked the deli without slip resistant shoes.

14

75.     The next day, on or about June 20, 2021, Suarez's coworker, Vincent, told her that "Costco has a secret swingers club."

76.     On or about July 9, 2021, Costco managers presented Suarez with a medical release for her shift accommodation.  Maiorana told Suarez, "All you have to do is sign it—it's that easy."  Maiorana pressured Suarez to the point where her heart began racing and she had the urge to use the bathroom, her hands were trembling, and Suarez did her best to try and hide her symptoms—from her PTSD.

77.     On or about September 14, 2021, a Costco coworker text messaged Suarez regarding his participation in Costco's internal investigation following Plaintiff's EEOC charge.  At the time of the investigation, in or around May of 2020, the employee had told the Costco representative that Suarez was "flirtatious."  However, the coworker text messaged Suarez, over a year later, regretting his statements, saying, "I didn't really know you like I know you know.  For what it's worth, I'm sorry.  I was forced to make a statement.  I was very uncomfortable with it and didn't want to do it."

78.     Around this time, a supervisor named Jay (last name unknown) said, "Manager Darnley told me to be careful with that one (Suarez) she's trouble."

79.     In or around August of 2021, Suarez applied for a promotion to "sales auditor."  The strongest candidates, according to Costco, were those who had the greatest seniority.

80.     On or about September 27, 2021, Costco selected Daniela over Suarez.  Daniela had two years of seniority at Costco—Suarez more than five.

81.     On or about September 30, 2021, Suarez called corporate to complain that she was more qualified than Daniela.  However, Costco told Suarez to discuss the matter with Maiorana at the Miami Lakes location.

82.     In or around October of 2021, Suarez applied for another position as "RTV Clerk." The Company hired a new employee with no experience over Suarez. This does not comport with Costco's representations to Suarez and pursuant to store policy that seniority plays a significant role in determining a candidate's strength.

83.     Meanwhile, Suarez's anxiety was increasing by Costco's insistence on denying Suarez promotions, and constant hounding for medical documents. On or about October 12, 2021, Suarez's doctor increased her Xanax dosage because of the anxiety Suarez experienced—and continues to experience—at work. Plaintiff made this clear to Maiorana.

84.     On or about December 14, 2021, Suarez's immediate supervisor, Front end manager, Hannah insisted on not allowing Suarez leave to take her medication. Another Costco manager physically stood in front of an entryway to block Suarez from leaving to take her medication. After pleading with them, Suarez contacted Tim, an assistant general manager who allowed Suarez to leave to take her medication.

85.     Suarez is experiencing ongoing hostility from her Costco management, and these allegations are just some of the examples of unlawful discrimination and retaliation which Costco has been subjecting Plaintiff to on a continuous and on-going basis throughout her employment.

86.     Plaintiff claims a continuous practice of discrimination and claims that Costco is subjecting her to continuing and ongoing violations and makes all claims herein under the continuing violations doctrine.

87.     Suarez further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the herein detailed unlawful discrimination and retaliation.

88.     Costco unlawfully discriminated against Plaintiff because of her sex and disability and retaliated against her for requesting medical leave by insisting on failing to accommodate her.

89.     Costco violated Title VII, the ADA/ADAA, the FMLA, and the FCRA by subjecting Plaintiff to unlawful employment discrimination because of her sex, disability, and in retaliation for requesting medical leave, and by failing to accommodate her disability.

90.     Likewise, Defendants Rodenburg and Rubanenko retaliated against Plaintiff for taking FMLA leave by failing to accommodate her and questioning the legitimacy of her disability accommodation requests.

91.     Plaintiff has also suffered—and has a record of suffering—emotional distress, mental anguish, loss of personal dignity, and other intangible damages.

92.     Plaintiff claims aggravation, activation, and/or exacerbation of any preexisting conditions, including her PTSD diagnosis made in December of 2020.

93.     As a result of Defendant Costco's unlawful conduct, Plaintiff has suffered damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities with Defendant, and continues to suffer the same.

94.     Plaintiff seeks punitive damages against Defendant Costco because Costco willfully and/or consciously disregarded Plaintiff's rights under Title VII, the ADA/ADAA, and the FCRA.

95.     At bottom, Defendant is liable for depriving Plaintiff of her personal dignity and her civil right to pursue an equal employment opportunity in a work environment free from unrelenting discrimination, harassment, and retaliation.

## CAUSES OF ACTION

### COUNT I
### Title VII, 42 U.S.C § 2000e-2(a)
### Hostile Work Environment – Sex
### (Against Defendant Costco)

96.     Plaintiff reincorporates the allegations in paragraphs 30-48.

97.     Costco violated Title VII by subjecting Plaintiff to an objectively hostile and abusive working environment that was sufficiently severe and/or pervasive to alter the terms and conditions of her employment.

98.     Plaintiff is a woman and therefore is a member of a protected class.

99.     Costco subjected Plaintiff to humiliation and abuse because of her sex.

100.    Sam Gonzalez, a manager, spread a nude photograph of Plaintiff on Instagram. Soon thereafter, dozens of Plaintiff's coworkers and even managers began talking to her about it. Plaintiff complained to Morales, who showed Plaintiff her nude photograph that was saved on Morales's phone.  In turn, Morales told Plaintiff, "Don't you just want to quit?"

101.    Costco managers solicited Plaintiff to participate in sexual acts Costco manager Calavaro messaged Plaintiff on Facebook, saying, "I can eat you good," referring to her unabashed desire to perform oral sex on Plaintiff.  Plaintiff complained to Morales, who told Plaintiff, "Don't worry—the account was just hacked," and took no corrective action.

102.    Consequently, Plaintiff had to confront Calavaro's husband, a Costco manager. When she did, Calavaro asked Plaintiff if she wanted to have a threesome with him and his wife, Marilyn Calavaro, another Costco manager.  Later in the summer of 2020, Tony Calavaro asked Plaintiff if she was "interested in going to a swinger's club in Doral" over Plaintiff's objection. She said, "I respect your lifestyle, but please, leave me out of it.  I am not interested."

103.     Throughout the summer of 2020, Plaintiff faced unwanted sexual comments and advances from additional Costco managers and supervisors.  For instance, one manager, Perkins, grabbed Plaintiff's phone and began scrolling through nude photographs.  On another occasion, Rainer, a Costco manager approached Suarez and said, "Your vagina looks great in those pants."

104.     Moreover, instead of investigating Calavaro, Morales gossiped about Plaintiff's discrimination complaints, telling everyone what Plaintiff had complained about, spreading rumors of Plaintiff's sexuality.

105.     Consequently, others began harassing Plaintiff.  For example, an unknown Costco manager or employee text messaged Plaintiff, telling her "[T]old [you] I would get u fire[d]—you really are a fucking dumb bitch."  Others approached Plaintiff and said things like, "Your vagina looks nice through those pants."

106.     Then Costco's purported investigation in November of 2020 only made matters worse.  Rodenburg and Shue headed the investigation. And at first, Rodenburg seemed reasonable. "We're gonna give you a warning," he told Suarez. However, then Shue began prodding, asking Suarez her to describe, in detail, sexual encounters with the manager.  Shue insisted on asking Plaintiff to describe her sexual encounters in extreme detail, demanding to know the circumstances of each sexual interaction with her manager.

107.     Suarez was scared because of the last experience with harassment and her nude photographs going around—which Rodenburg and Shue were both aware of. Suarez said she did not want others to find anything out, and Rodenburg ensured her that would not happen.  Suarez repeatedly expressed her reluctance to share the intimate details and felt harassed and embarrassed.

108.     The next day, the entire warehouse knew about the investigation. Indeed, various Costco managers, supervisors, and employees were aware and discussing Suarez's relationship

19

with the Assistant General Manager. Indeed, one of Plaintiff's co-workers, Shaq (last name unknown) told Suarez, "Everyone knows about what's going on."

109.     Costco managers, supervisors, and employees gossiped about Plaintiff and discussed her sexuality, and specifically discussing intimate acts and incidents Suarez revealed to Rodenburg. This is in direct violation of Costco's sexual harassment policy guaranteeing confidentiality and proscribes malicious gossiping or interfering with an investigation. Rodenburg spread specific details of the investigation to lower-level employees who had no role in the investigation. Rodenburg's conduct in publicly disclosing Plaintiff's private facts was outrageous, humiliating, and because of Plaintiff's sex.   As a result, the gossip and verbal humiliation unreasonably interfered with Plaintiff's work environment.

110.     Costco's failure to investigate Plaintiff's complaints resulted in lingering unwanted sexual advances, even after Plaintiff filed an EEOC charge.  For example, on or about June 20, 2021, Suarez's coworker, Vincent, told her that "Costco has a secret swingers club."

111.     The above-described unwanted sexual advances and humiliation was severe and pervasive as the repeated instances resulted in a PTSD diagnosis for Plaintiff.  Likewise, the above unreasonably interfered with Plaintiff's work duties because she could not complete her tasks without experiencing the above-described harassment.

112.     Plaintiff makes these allegations under the continuing violations doctrine because she has experienced the same kind of harassment perpetrated by dozens of Costco managers, supervisors, and employees, has placed Costco on notice of such, and the harassment continues as of this filing.

113.     Taken together, the above allegations give rise to the reasonable inference that Costco violated Title VII by discriminating against Plaintiff in the terms, conditions, and privileges of Plaintiff's employment because of her sex.

114.     As an actual and proximate result of Costco's unlawful employment practices in violation of Title VII, Plaintiff has suffered damages.

**COUNT II**
**FCRA § 760.10(a)(1)**
**Hostile Work Environment – Sex**
**(Against Defendant Costco)**

115.     Plaintiff reincorporates the allegations in paragraphs 30-48.

116.     Costco violated the FCRA by subjecting Plaintiff to an objectively hostile and abusive working environment that was sufficiently severe and/or pervasive to alter the terms and conditions of her employment.

117.     Plaintiff is a woman and therefore is a member of a protected class.

118.     Costco subjected Plaintiff to harassment because of her sex.

119.     Costco violated the FCRA by subjecting Plaintiff to an objectively hostile and abusive working environment that was sufficiently severe and/or pervasive to alter the terms and conditions of her employment.

120.     Plaintiff is a woman and therefore is a member of a protected class.

121.     Costco subjected Plaintiff to humiliation and abuse because of her sex.

122.     Sam Gonzalez, a manager, spread a nude photograph of Plaintiff on Instagram. Soon thereafter, dozens of Plaintiff's coworkers and even managers began talking to her about it. Plaintiff complained to Morales, Costco's Assistant General Manager, who showed Plaintiff her nude photograph that was saved on Morales's phone.  In turn, Morales told Plaintiff, "Don't you just want to quit?"

21

123.    Costco managers solicited Plaintiff to participate in sexual acts Costco manager Calavaro messaged Plaintiff on Facebook, saying, "I can eat you good," referring to her unabashed desire to perform oral sex on Plaintiff.   Plaintiff complained to Morales, who told Plaintiff, "Don't worry—the account was just hacked," and took no corrective action.

124.    Consequently, Plaintiff had to confront Calavaro's husband, a Costco manager. When she did, Calavaro asked Plaintiff if she wanted to have a threesome with him and his wife, Marilyn Calavaro, another Costco manager.  Later in the summer of 2020, Tony Calavaro asked Plaintiff if she was "interested in going to a swinger's club in Doral" over Plaintiff's objection. She said, "I respect your lifestyle, but please, leave me out of it.  I am not interested."

125.    Throughout the summer of 2020, Plaintiff faced unwanted sexual comments and advances from additional Costco managers and supervisors.  For instance, one manager, Perkins, grabbed Plaintiff's phone and began scrolling through nude photographs.  On another occasion, Rainer, a Costco manager approached Suarez and said, "Your vagina looks great in those pants."

126.    Moreover, instead of investigating Calavaro, Morales gossiped about Plaintiff's discrimination complaints, telling everyone what Plaintiff had complained about, spreading rumors of Plaintiff's sexuality.

127.    Consequently, others began harassing Plaintiff.  For example, an unknown Costco manager or employee text messaged Plaintiff, telling her "[T]old [you] I would get u fire[d]—you really are a fucking dumb bitch."  Others approached Plaintiff and said things like, "Your vagina looks nice through those pants."

128.    Then Costco's purported investigation in November of 2020 only made matters worse. Rodenburg and Shue headed the investigation. And at first, Rodenburg seemed reasonable. "We're gonna give you a warning," he told Suarez. However, then Shue began prodding, asking

Suarez her to describe, in detail, sexual encounters with the manager.  Shue insisted on asking Plaintiff to describe her sexual encounters in extreme detail, demanding to know the circumstances of each sexual interaction with her manager.

129.   Suarez was scared because of the last experience with harassment and her nude photographs going around—which Rodenburg and Shue were both aware of. Suarez said she did not want others to find anything out, and Rodenburg ensured her that would not happen.  Suarez repeatedly expressed her reluctance to share the intimate details and felt harassed and embarrassed.

130.   The next day, the entire warehouse knew about the investigation. Indeed, various Costco managers, supervisors, and employees were aware and discussing Suarez's relationship with the Assistant General Manager. Indeed, one of Plaintiff's co-workers, Shaq (last name unknown) told Suarez, "Everyone knows about what's going on."

131.   Costco managers, supervisors, and employees gossiped about Plaintiff and discussed her sexuality, and specifically discussing intimate acts and incidents Suarez revealed to Rodenburg. This is in direct violation of Costco's sexual harassment policy guaranteeing confidentiality and proscribes malicious gossiping or interfering with an investigation. Rodenburg spread specific details of the investigation to lower-level employees who had no role in the investigation.  Rodenburg's conduct in publicly disclosing Plaintiff's private facts was outrageous, humiliating, and because of Plaintiff's sex.  As a result, the gossip and verbal humiliation unreasonably interfered with Plaintiff's work environment.

132.   Costco's failure to investigate Plaintiff's complaints resulted in lingering unwanted sexual advances, even after Plaintiff filed an EEOC charge.  For example, on or about June 20, 2021, Suarez's coworker, Vincent, told her that "Costco has a secret swingers club."

133.    The above-described unwanted sexual advances and humiliation was severe and pervasive as the repeated instances resulted in a PTSD diagnosis for Plaintiff.  Likewise, the above unreasonably interfered with Plaintiff's work duties because she could not complete her tasks without experiencing the above-described harassment.

134.    Plaintiff makes these allegations under the continuing violations doctrine because she has experienced the same kind of harassment perpetrated by dozens of Costco managers, supervisors, and employees, has placed Costco on notice of such, and the harassment continues as of this filing.

135.    Taken together, the above-described actions give rise to the reasonable inference that Costco violated the FCRA by discriminating against Plaintiff in the terms, conditions, and privileges of Plaintiff's employment because of her sex.

136.    As an actual and proximate result of Costco's unlawful employment practices in violation of the FCRA, Plaintiff has suffered damages.

**COUNT III**
**FMLA, 29 U.S.C. § 2615(a)(2)**
**Retaliation**
**(Against all Defendants)**

137.    Plaintiff reincorporates the allegations in paragraphs 49-66.

138.    The FMLA makes it illegal for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(2).

139.    Defendants intentionally discriminated against Plaintiff for taking FMLA leave in December of 2020.

140.    Plaintiff is an eligible employee under the FMLA because she worked for Costco for more than 12 months, and Defendant employed Plaintiff for at least 1,250 hours of service

during the 12-month period immediately preceding exercising her FMLA rights.  Plaintiff worked from 6 P.M. to 11 P.M., at least 5 days a week, for at least 50 weeks during 2020-2021, meaning Plaintiff was employed for at least 1,250 hours during the 12-month period immediately preceding exercising her FMLA rights.  Likewise, Costco approved Plaintiff's FMLA leave, and told her that she was entitled to same because of her PTSD diagnosis.

141.    As an eligible employee, Plaintiff was entitled to take a leave of absence under the FMLA to care for her PTSD diagnosis, a serious medical condition.   Indeed, Plaintiff's psychiatrist, Dr. Gamez, stated Plaintiff's medical leave was medically necessary.

142.    Defendant Costco is a covered employer by the FMLA because Costco, employed more than 50 employees within a 75-mile radius of its Miami Lakes locations throughout the current and preceding calendar years.  29 CFR § 825.104(a).

143.    Defendant Rodenburg is a covered employer because he acted directly and/or indirectly in the interest of Defendant Costco in denying Plaintiff her reasonable accommodations in March of 2021.  29 U.S.C. § 2611(4(A)(ii)(I).

144.    Defendant Rubanenko is a covered employer because he acted directly and/or indirectly in the interest of Defendant Costco in denying Plaintiff her reasonable accommodations in March of 2021.  29 U.S.C. § 2611(4(A)(ii)(I).

145.    Moreover, Defendant Rubanenko had supervisory authority over Plaintiff, including the power to terminate Plaintiff in addition to supervising and controlling Plaintiff's employment, the conditions of her employment, her rate and method of pay, and exercised personal responsibility for denying her reasonable accommodations in March of 2021 in retaliation for Plaintiff exercising her FMLA rights.

146.    Plaintiff engaged in protected activity under the FMLA by requesting and taking FMLA leave in December of 2020.

147.    Defendants impermissible retaliatory and/or discriminatory animus for Plaintiff taking FMLA leave became evident upon her return from taking FMLA leave.

148.    Plaintiff's supervisors began harassing her immediately upon her return from FMLA leave on or about February 28, 2021.  Indeed, Alexis, the Front End Manager, told Plaintiff, "You're considered trouble because you know too much—we like the dumb employees."

149.    Defendant Rodenburg and Defendant Rubanenko discriminated against Plaintiff upon her return from FMLA leave by denying her reasonable accommodations requests, and by harassing Plaintiff for requesting accommodations under the ADA.

150.    On or about March 1, 2021, Suarez provided an accommodation note from Dr. Gamez to Rodenburg and Rubanenko that stated Plaintiff must not work beyond 7 P.M. because her PTSD medication made her drowsy, groggy, and driving home at such time would be unsafe.

151.    Defendant Rodenburg denied Plaintiff's reasonable accommodation.  He said, "I can't accommodate you because there's seniority and it would seem like preferable treatment."  Plaintiff begged with Rodenburg to accommodate her PTSD.  Rodenburg said, "We have plenty of new employees who could replace you."  Plaintiff said, "I have rights under the ADA."

152.    Plaintiff complained to Rubanenko about Rodenburg's insistence on not accommodating Plaintiff.  On or about March 2, 2021, Suarez emailed Rodenburg and Jonathan (last name unknown), Costco's Assistant General Manager, and said, "Around 7ish I do start feeling groggy, meaning I get dizzy, nauseous, and extremely tired." Further, Suarez said, "I need to make sure I get home safely without falling asleep behind the wheel."

153.     On or about March 3, 2021, Rodenburg denied Plaintiff's accommodation request and scheduled her to work *beginning at* 7:00 P.M.—11P.M.  Rodenburg refused to accommodate Plaintiff because he claimed other employees had seniority for accommodations.  On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you."

154.     Plaintiff was out of work for about 3 weeks while Costco thought whether it could accommodate her.

155.     On or about March 25, 2021, Rodenburg provided and instructed Suarez to sign documents indicating that Costco could not accommodate her disability because she had already used all of her "available FMLA leave."

156.     Finally, Rodenburg approved Suarez's accommodation, assigning her to work from 3 P.M. to 7 P.M. However, Rodenburg called Plaintiff and said, "This is only a short-term accommodation—it's not going to last."

157.     The above-described adverse actions are materially adverse because any reasonable employee well-might be dissuaded from taking FMLA leave if she knew that upon her return supervisors and managers would question whether her accommodation was legitimate; refuse to accommodate her disability; tell her that the accommodation would not last, and tell her, that she should be lucky she still had her job.

158.     Defendants treated Plaintiff less favorably than similarly situated employees. Costco had no problems adjusting schedules for her co-workers who were taking college classes, or even those who requested schedule changes for second jobs. Yet, Costco would not accommodate a disability for Plaintiff.

159.     Plaintiff's return from FMLA leave on or about February 28, 2021, and the above-described materially adverse actions are causally connected based on temporal proximity and

because Plaintiff's protected activity and the Defendants subsequent actions are not completely unrelated.

160.    To be sure, Defendants—including Rodenburg and Rubeneko—had actual knowledge of Plaintiff's FMLA request in December of 2020 because Plaintiff requested FMLA leave through Defendants.   Defendants likewise would not have taken the above-described materially adverse actions against Plaintiff but for her requesting FMLA leave.  Indeed, Rodenburg and Rubanenko specifically cited Plaintiff's recent FMLA leave as reason for denying her reasonable accommodations under the ADA.

161.    As a result of Defendants unlawful retaliation in violation of 29 U.S.C. § 2615(a)(2), Plaintiff has suffered damages.

**COUNT IV**
**ADA, 42 U.S.C. § 12112(b)(5)(A)**
**Disability – Failure to Accommodate**
**(Against Defendant Costco)**

162.    Plaintiff reincorporates the allegations in paragraphs 49-66, 81-83.

163.    Defendant Costco violated 42 U.S.C. § 12112(b)(5)(A) by failing to provide reasonable accommodations for Plaintiff's PTSD.

164.    Costco had a legal duty, under the ADA, to provide a reasonable accommodation to Plaintiff as a qualified individual with a disability.

165.    Plaintiff was diagnosed with PTSD in December of 2020.   Because PTSD substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under 42 U.S.C. § 12112(8).

166.    Plaintiff is a qualified individual under 42 U.S.C § 12112(8) because, as described throughout this complaint, Plaintiff can and did perform the essential functions of her employment.

167.    Costco is a covered employer under 42 U.S.C § 12112(5)(a) because Costco engages in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

168.    Plaintiff demanded a specific request for a reasonable accommodation when she asked that her schedule end no later than 7 P.M.  Indeed, on or about March 2, 2021, Plaintiff asked her supervisor, Rodenburg, "Around 7ish I do start feeling groggy, meaning I get dizzy, nauseous, and extremely tired." Further, Suarez said, "I need to make sure I get home safely without falling asleep behind the wheel."  Plaintiff demanded a specific request for a reasonable accommodation on or about December 14, 2021, when she asked to take her medication at work because she felt as if she were going to faint.  Plaintiff's doctor had increased her PTSD medication in or around October of 2021.

169.    Plaintiff's specific request for her schedule to end no later than 7 P.M. was a reasonable accommodation under 42 U.S.C § 12112(9)(b) because such accommodation to modify her schedule is expressly provided for in the ADA, and was necessary for Plaintiff to perform the essential functions of her job at a satisfactory level when her cognitive abilities were in tact. The accommodation was reasonable because driving home any later than 7 P.M. would be dangerous for Plaintiff because she would doze off behind the wheel.   Additionally, the specific accommodation request on or about December 14, 2021 was a reasonable accommodation because Plaintiff needed to take her medication.

170.    Defendant Costco refused to accommodate Plaintiff's above-described reasonable accommodation. Defendant Rodenburg said, "I can't accommodate you because there's seniority and it would seem like preferable treatment."  Plaintiff begged with Rodenburg to accommodate

her PTSD.  Rodenburg said, "We have plenty of new employees who could replace you."  Plaintiff said, "I have rights under the ADA."

171.    Instead, On or about March 3, 2021, Rodenburg scheduled her to work *beginning at* 7:00 P.M.—11P.M.  On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you" after she requested an accommodation. On or about December 14 2021, Hannah, Plaintiff's manager refused to relieve Plaintiff from her shift to take her medication, while another manager physically blocked the exit for Plaintiff to leave.

172.    These allegations, taken together, are sufficient to suggest Costco intentionally discriminated against Plaintiff because of her disability by failing to provide reasonable accommodations to Plaintiff.

173.    To be sure, Plaintiff's accommodation would cause no undue hardship to Costco because having Plaintiff's schedule ending at 7 P.M. was not significantly difficult or expensive in light of the factors enumerated in 42 U.S.C. § 1211210(B).  Likewise, refusing to allow Plaintiff to leave to take her medication because of her increasing anxiety would not have any difficulty or expensive to Costco.

174.    Defendant Costco violated 42 U.S.C. § 12112(b)(5)(A) by failing to accommodate Plaintiff's reasonable accommodation requests.

175.    As a result of Costco's failure to accommodate Plaintiff's specific and reasonable accommodations, Plaintiff has suffered damages.

176.    As the above-described discrimination was knowing and willful—and perpetrated by managers and executives—Plaintiff seeks punitive damages against Costco.

**COUNT V**
**FCRA § 760.10**
**Disability – Failure to Accommodate**
**(Against Defendant Costco)**

177.     Plaintiff reincorporates the allegations contained in paragraphs 49-66, 81-83.

178.     Defendant Costco violated the FCRA by failing to provide reasonable accommodations for Plaintiff's PTSD.

179.     Costco had a legal duty, under the FCRA, to provide a reasonable accommodation to Plaintiff as a qualified individual with a disability.

180.     Plaintiff was diagnosed with PTSD in December of 2020.  Because PTSD substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the FCRA.

181.     Plaintiff is a qualified individual under the FCRA because, as described throughout this complaint, Plaintiff can and did perform the essential functions of her employment.

182.     Costco is a covered employer under the FCRA because Costco engages in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

183.     Plaintiff demanded a specific request for a reasonable accommodation when she asked that her schedule end no later than 7 P.M.  Indeed, on or about March 2, 2021, Plaintiff asked her supervisor, Rodenburg, "Around 7ish I do start feeling groggy, meaning I get dizzy, nauseous, and extremely tired." Further, Suarez said, "I need to make sure I get home safely without falling asleep behind the wheel."

184.     Plaintiff's specific request for her schedule to end no later than 7 P.M. was a reasonable accommodation under the FCRA because such accommodation to modify her schedule is expressly provided for in the ADA—which is incorporated into the FCRA—and was necessary

31

for Plaintiff to perform the essential functions of her job at a satisfactory level when her cognitive abilities were in tact. The accommodation was reasonable because driving home any later than 7 P.M. would be dangerous for Plaintiff because she would doze off behind the wheel.  Additionally, the specific accommodation request on or about December 14, 2021 was a reasonable accommodation because Plaintiff needed to take her medication.

185.     Defendant Costco refused to accommodate Plaintiff's above-described reasonable accommodation. Defendant Rodenburg said, "I can't accommodate you because there's seniority and it would seem like preferable treatment."  Plaintiff begged with Rodenburg to accommodate her PTSD.  Rodenburg said, "We have plenty of new employees who could replace you."  Plaintiff said, "I have rights under the ADA."  Instead, On or about March 3, 2021, Rodenburg scheduled her to work *beginning at* 7:00 P.M.—11P.M.  On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you" after she requested an accommodation.

186.     Finally—after missing weeks of work because of Costco's failure to accommodate Plaintiff—Rodenburg approved Plaintiff's accommodation, assigning her to work from 3 P.M. to 7 P.M. However, Rodenburg called Plaintiff and said, "This is only a short-term accommodation—it's not going to last."

187.     These allegations, taken together, are sufficient to suggest Costco intentionally discriminated against Plaintiff because of her disability by failing to provide reasonable accommodations to Plaintiff.

188.     To be sure, Plaintiff's accommodation would cause no undue hardship to Costco because having Plaintiff's schedule ending at 7 P.M. was not significantly difficult or expensive in light of the factors enumerated incorporated into the FCRA.

189.    Defendant Costco violated the FCRA by failing to accommodate Plaintiff's reasonable accommodation requests.

190.    As a result of Costco's failure to accommodate Plaintiff's specific and reasonable accommodations, Plaintiff has suffered damages.

191.    As the above-described discrimination was knowing and willful—and perpetrated by managers and executives—Plaintiff seeks punitive damages against Costco.

**COUNT VI**
**ADA, 42 U.S.C § 12101**
**Hostile Work Environment – Disability**
**(Against Defendant Costco)**

192.    Plaintiff reincorporates the allegations in paragraphs 45-84.

193.    Defendant violated the ADA by subjecting Plaintiff to humiliation, and an abusive environment because of her disability altering the terms and conditions of Plaintiff's employment because she complained of disability discrimination.

194.    Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation to work no later than 7 P.M., by telling her supervisor, "I have rights under the ADA," and by filing an EEOC discrimination charge.

195.    The Company subjected Plaintiff to unwelcome harassment after and because she engaged in the above-described protected activity.  For instance, Rodenburg said, "I can't accommodate you because there's seniority and it would seem like preferable treatment."  Plaintiff begged with Rodenburg to accommodate her PTSD.  Rodenburg said, "We have plenty of new employees who could replace you."

196.    Instead, On or about March 3, 2021, Rodenburg scheduled her to work *beginning at* 7:00 P.M.—11P.M.  On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you" after she requested an accommodation.

197.     Plaintiff further engaged in protected activity around Suarez filed her EEOC charge of discrimination on or about April 9, 2021.  Soon thereafter, employees from multiple Costco locations in South Florida began talking about Plaintiff's case.

198.     Soon after Plaintiff filed her EEOC charge, dozens of Costco employees became aware of her discrimination charge and began asking her about same.  Indeed, at least a half-dozen of Plaintiff's coworkers began approaching Suarez about advise regarding disability and FMLA issues, asking what they needed to do to obtain an accommodation.

199.     Costco subjected Plaintiff to harassment because of her disability by  not keeping Plaintiff's EEOC charge confidential.

200.     In or around late April of 2021, at least a half-dozen of Plaintiff's coworkers began approaching Suarez about advise regarding FMLA and health issues and what they needed to do to obtain an accommodation.  Indeed, Costco's employees had learned about Suarez's EEOC charge—not from Suarez—but because Costco told them.  Consequently, multiple employees were well aware of Suarez's discrimination charge.

201.     For instance, one employee approached Suarez and said, "I was told you know your shit and not to mess with you."  This resembles the notion from Morales's comments who told Suarez, "We like the dumb employees."  Around this time, Suarez learned that even employees at the North Miami location knew about her case.  Employees at the North Miami location would say, "Yeah, Astrid's trouble."  On or about May 5, 2021, Suarez's coworker named "Vince" (last name unknown) told Plaintiff that managers at the Miami Lakes store were "trying to find anything they can to fire you."   On or about May 13, 2021, Suarez's coworker named "Sam" (last name unknown) told Plaintiff, "You're a high-quality employee—they don't like that here."

202.    On or about May 18, 2021, Moe, assistant front end manager, told Plaintiff the Company is "trying to put you in the deli because of your work hours ending at 7 P.M."  Later that day, Maiorana told Plaintiff to help in the deli—a task completely unrelated to Plaintiff's job title at the front end.

203.    Then, on or about June 19, 2021, a supervisor of the store told Suarez to go help in the deli.  Suarez said, "But I'm not wearing slip resistant shoes."  The supervisor then told Maiorana Suarez said that she did not want to be unsafe.  Then an assistant manager approached Suarez and said she would give Plaintiff coffee if she worked the deli without slip resistant shoes.

204.    On or about July 9, 2021, Costco managers presented Suarez with a medical release for her shift accommodation.   Maiorana told Suarez, "All you have to do is sign it—it's that easy."  Maiorana pressured Suarez to the point where her heart began racing and she had the urge to use the bathroom, her hands were trembling, and Suarez did her best to try and hide her symptoms—from her PTSD.  Plaintiff overheard a supervisor named Jay (last name unknown) tell another employee, "Manager Darnley told me to be careful with that one (Suarez) she's trouble."

205.    On or about October 12, 2021, Suarez's doctor increased her Xanax dosage because of the anxiety Suarez experienced—and continues to experience—at work.  Plaintiff made this clear to Maiorana.

206.    On or about December 14, 2021, Suarez's immediate supervisor, Front end manager, Hannah insisted on not allowing Suarez leave to take her medication.  Another Costco manager physically stood in front of an entryway to block Suarez from leaving to take her medication.  After pleading with them, Suarez contacted Tim, an assistant general manager who allowed Suarez to leave to take her medication.

207.    Plaintiff's protected activity was the but for cause of the above-described harassment because such harassment would never had occurred had Plaintiff not complained about disability discrimination or requested an accommodation under the ADA or filed a charge of discrimination with the EEOC.

208.    Moreover, the harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.  As an initial matter, Plaintiff perceived the harassment as severe and pervasive because she complained about disability discrimination on multiple occasions and filed a charge of discrimination with the EEOC.  To be sure, any reasonable person in Plaintiff's position would likewise adjudge the above-described harassment as severe and/or pervasive because such conduct was frequent, severe, physically threatening and humiliating, and because the harassment described throughout this complaint unreasonably interfered with Plaintiff's job performance.

209.    Costco is vicariously or directly liable for the above-described environment because Costco had actual knowledge of the discrimination and because Costco's managers, supervisors and executives directly participated and facilitated the discrimination.

210.    These allegations provide sufficient factual detail to suggest intentional discrimination in the form of a hostile work environment because of Plaintiff's disability.

211.    Likewise, these allegations are continuous in nature and Plaintiff brings these claims under the continuing violations doctrine.

212.    Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the ADA.

213.    As the above-described harassment was knowing and willful, Plaintiff seeks punitive damages against Costco.

## COUNT VII
### FCRA § 760.10
### Hostile Work Environment – Disability
### (Against Defendant Costco)

214.    Plaintiff reincorporates the allegations in paragraphs 45-84.

215.    Defendant Costco violated the FCRA by subjecting Plaintiff to a hostile work environment because of her disability by taking materially adverse actions against Plaintiff after she requested reasonable accommodations under the ADA, and because she filed an EEOC charge.

216.    Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation to work no later than 7 P.M., by telling her supervisor, "I have rights under the ADA," and by filing an EEOC discrimination charge.

217.    The Company subjected Plaintiff to unwelcome harassment after and because she engaged in the above-described protected activity.  For instance, Rodenburg said, "I can't accommodate you because there's seniority and it would seem like preferable treatment."  Plaintiff begged with Rodenburg to accommodate her PTSD.  Rodenburg said, "We have plenty of new employees who could replace you."

218.    Instead, On or about March 3, 2021, Rodenburg scheduled her to work *beginning at* 7:00 P.M.—11P.M.  On or about March 4, 2021, Rubanenko told Suarez, "You should be lucky we don't fire you" after she requested an accommodation.

219.    Plaintiff further engaged in protected activity around Suarez filed her EEOC charge of discrimination on or about April 9, 2021.  Soon thereafter, employees from multiple Costco locations in South Florida began talking about Plaintiff's case.

220.    Soon after Plaintiff filed her EEOC charge, dozens of Costco employees became aware of her discrimination charge and began asking her about same.  Indeed, at least a half-dozen

37

of Plaintiff's coworkers began approaching Suarez about advise regarding disability and FMLA issues, asking what they needed to do to obtain an accommodation.

221.    Costco subjected Plaintiff to harassment because of her disability by not keeping Plaintiff's EEOC charge confidential.

222.    In or around late April of 2021, at least a half-dozen of Plaintiff's coworkers began approaching Suarez about advice regarding FMLA and health issues and what they needed to do to obtain an accommodation.  Indeed, Costco's employees had learned about Suarez's EEOC charge—not from Suarez—but because Costco told them.  Consequently, multiple employees were well aware of Suarez's discrimination charge.

223.    For instance, one employee approached Suarez and said, "I was told you know your shit and not to mess with you."  This resembles the notion from Morales's comments who told Suarez, "We like the dumb employees."  Around this time, Suarez learned that even employees at the North Miami location knew about her case.  Employees at the North Miami location would say, "Yeah, Astrid's trouble."  On or about May 5, 2021, Suarez's coworker named "Vince" (last name unknown) told Plaintiff that managers at the Miami Lakes store were "trying to find anything they can to fire you."   On or about May 13, 2021, Suarez's coworker named "Sam" (last name unknown) told Plaintiff, "You're a high-quality employee—they don't like that here."

224.    On or about May 18, 2021, Moe, assistant front end manager, told Plaintiff the Company is "trying to put you in the deli because of your work hours ending at 7 P.M."  Later that day, Maiorana told Plaintiff to help in the deli—a task completely unrelated to Plaintiff's job title at the front end.

225.    Then, on or about June 19, 2021, a supervisor of the store told Suarez to go help in the deli.  Suarez said, "But I'm not wearing slip resistant shoes."  The supervisor then told

Maiorana Suarez said that she did not want to be unsafe.  Then an assistant manager approached Suarez and said she would give Plaintiff coffee if she worked the deli without slip resistant shoes.

226.    On or about July 9, 2021, Costco managers presented Suarez with a medical release for her shift accommodation.   Maiorana told Suarez, "all you have to do is sign it—it's that easy."   Maiorana pressured Suarez to the point where her heart began racing and she had the urge to use the bathroom, her hands were trembling, and Suarez did her best to try and hide her symptoms—from her PTSD.

227.    Plaintiff's protected activity was the but for cause of the above-described harassment because such harassment would never had occurred had Plaintiff not complained about disability discrimination or requested an accommodation under the ADA or filed a charge of discrimination with the EEOC.

228.    Moreover, the harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.  As an initial matter, Plaintiff perceived the harassment as severe and pervasive because she complained about disability discrimination on multiple occasions and filed a charge of discrimination with the EEOC.  To be sure, any reasonable person in Plaintiff's position would likewise adjudge the above-described harassment as severe and/or pervasive because such conduct was frequent, severe, physically threatening and humiliating, and because the harassment described throughout this complaint unreasonably interfered with Plaintiff's job performance.

229.    Costco is vicariously or directly liable for the above-described environment because Costco had actual knowledge of the discrimination and because Costco's managers, supervisors and executives directly participated and facilitated the discrimination.

230.   These allegations provide sufficient factual detail to suggest intentional discrimination in the form of a hostile work environment because of Plaintiff's disability.

231.   Likewise, these allegations are continuous in nature and Plaintiff brings these claims under the continuing violations doctrine.

232.   Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the FCRA.

**COUNT VIII**
**ADA U.S.C. § 12112(a)**
**Disparate Treatment**
**(Against Defendant Costco)**

233.   Plaintiff reincorporates the allegations in paragraphs 78-81.

234.   Defendant violated the ADA by intentionally discriminating against Plaintiff because of her disability and because she requested accommodations by failing to failing to promote Plaintiff on multiple occasions because of her disability, and because she requested accommodations.

235.   Specifically, Costco failed to promote Plaintiff on several occasions because of her protected class status under the ADA.

236.   Plaintiff has PTSD and anxiety.  Because PTSD and anxiety substantially limits at least one of Plaintiff's major life activities, Plaintiff is a disabled individual.

237.   Plaintiff is a qualified individual because she can perform the essential functions of "sales auditor" and "RTV clerk," the two positions she applied for in the summer of 2021.

238.   Plaintiff had been performing the tasks of both position in her more than five years of experience in various clerk positions.

239.   Plaintiff suffered an adverse employment action because of her disability.

240.   In or around August of 2021, Suarez applied for a promotion to "sales auditor."  The strongest candidates, according to Costco, were those who had the greatest seniority.

241.   On or about September 27, 2021, Costco selected Daniela over Suarez.  Daniela had two years of seniority at Costco—Suarez more than five.

242.   On or about September 30, 2021, Suarez called corporate to complain that she was more qualified than Daniela.  However, Costco told Suarez to discuss the matter with Maiorana at the Miami Lakes location.

243.   In or around October 2021, Suarez applied for another position as "RTV Clerk."  The Company hired a new employee with no experience over Suarez, even though the qualifications for the position were to be determined by experience level.

244.   Taken together, these allegations are sufficient to suggest Costco intentionally discriminated against Plaintiff because of her disability and because she requested disability accommodations, and because she complained about disability discrimination.

245.   Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the ADA.

246.   As the above-described harassment was knowing and willful, Plaintiff seeks punitive damages against Costco.

**COUNT IX**
**FCRA § 760.10**
**Disparate Treatment**
**(Against Defendant Costco)**

247.   Plaintiff reincorporates the allegations in paragraphs 78-81.

248.   Defendant violated the FCRA by intentionally discriminating against Plaintiff because of her disability and because she requested accommodations by failing to failing to

promote Plaintiff on multiple occasions because of her disability, and because she requested accommodations.

249. Specifically, Costco failed to promote Plaintiff on several occasions because of her protected class status under the FCRA.

250. Plaintiff has PTSD and anxiety.  Because PTSD and anxiety substantially limits at least one of Plaintiff's major life activities, Plaintiff is a disabled individual.

251. Plaintiff is a qualified individual because she can perform the essential functions of "sales auditor" and "RTV clerk," the two positions she applied for in the summer of 2021.

252. Plaintiff had been performing the tasks of both position in her more than five years of experience in various clerk positions.

253. Plaintiff suffered an adverse employment action because of her disability.

254. In or around August of 2021, Suarez applied for a promotion to "sales auditor."  The strongest candidates, according to Costco, were those who had the greatest seniority.

255. On or about September 27, 2021, Costco selected Daniela over Suarez.  Daniela had two years of seniority at Costco—Suarez more than five.

256. On or about September 30, 2021, Suarez called corporate to complain that she was more qualified than Daniela.  However, Costco told Suarez to discuss the matter with  Maiorana at the Miami Lakes location.

257. In or around October 2021, Suarez applied for another position as "RTV Clerk."  The Company hired a new employee with no experience over Suarez, even though the qualifications for the position were to be determined by experience level.

258.    Taken together, these allegations are sufficient to suggest Costco intentionally discriminated against Plaintiff because of her disability and because she requested disability accommodations, and because she complained about disability discrimination.

259.    Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the FCRA.

260.    As the above-described harassment was knowing and willful, Plaintiff seeks punitive damages against Costco.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiff demands judgment against Defendant, containing the following relief, respectively:

A.      As against Defendant Costco, pursuant to FCRA § 760.11(5), Title VII § 102(b)(3), ADA 42 U.S.C. § 12112, an award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

B.      As against Defendant Costco, pursuant to FCRA § 760.11(5), Title VII § 102(b)(3), ADA 42 U.S.C. § 12112, and, as against all Defendants, FMLA 29 U.S.C. § 2617(a)(1)(A)(i)(I), an award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

C.      As against Defendant Costco, pursuant to FCRA § 760.11(5), Title VII § 102(b)(1), and ADA, 42 U.SC. § 12112, an award of punitive damages for damages arising from Defendant's

discriminatory employment practices with malice or with reckless indifference to Plaintiff's rights under federal and state law;

D.      As against Defendant Costco, pursuant to FCRA § 760.11(5) and Title VII § 103, ADA 42 U.S.C. § 12112, and as against all Defendants,  FMLA 29 U.S.C. § 2617(a)(1)(A)(i)(I), an award of costs that Plaintiff has incurred in this Action, as well as Plaintiff's reasonable attorneys' fees plus interest to the fullest extent permitted by law; and

E.      Such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991.

Dated: January 20, 2022.

Respectfully submitted,

*/s/ Brett D. Kaplan*_____
Brett D. Kaplan, Esq.
FL Bar No. 1031866
brett@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Ave., Suite 1310
Miami, Florida 33131
Telephone: (305) 946-1884
Facsimile: (305) 503-6741
*Attorneys for Plaintiff Astrid Suarez*