UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-20242-CIV-MARTINEZ

ASTRID SUAREZ,

      Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,
*et al.*,

      Defendants.

_____/

## ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

**THIS CAUSE** came before this Court on Defendants' Partial Motion to Dismiss the Amended Complaint (the "Motion"), (ECF No. 17). This Court has reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised of the premises. Accordingly, after careful consideration, the Motion is **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth herein.

## I.    BACKGROUND

By this action, Plaintiff Astrid Suarez seeks to recover against her former employer, Defendant Costco Wholesale Corporation, and two of her former supervisors, Defendants Roy A. Rodenburg and Yordan B. Rubanenko, for allegedly discriminating against her on the bases of her sex and disability. (*See generally* Am. Compl., ECF No. 10.)

Plaintiff is a thirty-year-old woman who has been diagnosed with post-traumatic stress disorder ("PTSD"). (*Id.* ¶¶ 19, 21.) Costco is a membership-only box store that sells wholesale consumer goods. (*Id.* ¶ 8.) Mr. Rodenburg is alleged to be the General Manager at Costco's Miami Lakes, Florida, store. (*Id.* ¶ 11.) Mr. Rubanenko is alleged to be Costco's Executive Vice

President and COO for the Eastern Division.  (*Id.* ¶ 13.)

In September 2016, Plaintiff began working as a Deli Attendant at Costco's Miami Lakes, Florida, store.  (*Id.* ¶ 22.)  In September 2019, Plaintiff became an Office Clerk, and in November 2020, Plaintiff became a "Front End Assistant" on the warehouse floor at the same store.  (*Id.*)  Throughout the course of her employment, Plaintiff alleges, she endured multiple instances of sexual harassment: Plaintiff was the target of sexual advances by Costco Assistant Manager Marilyn Calavera, (*id.* ¶ 27), sexual comments made by two managers identified as "Perkins" and "Rainer," (*id.* ¶¶ 29–30), and sexual insults, (*id.* ¶ 32).  Plaintiff also alleges that an unnamed supervisor posted nude photographs of Plaintiff on Instagram.  (*Id.* ¶ 25.)

In November 2020, Costco initiated an investigation into a relationship it believed Plaintiff had with an Assistant General Manager identified by Plaintiff only as "Jose."  (*Id.* ¶ 33.)  Costco's Personnel Specialist, Jonathan Shue, led the investigation alongside Mr. Rodenburg.  (*Id.*)  Plaintiff cooperated with the investigation and admitted to having a "sexual relationship" with Jose but became "offended by [Mr.] Shue's insistence for [her] to describe sexual encounters with Jose in extreme detail."  (*Id.* ¶ 34.)  Plaintiff contends that "dozens of Costco employees began making comments about the investigation."  (*Id.* ¶ 35.)  And Plaintiff states that employees began describing to her rumors about specific instances of Plaintiff and Jose's sexual conduct.  (*Id.* ¶ 37.)  On November 20, 2020, Mr. Rodenburg reassigned Plaintiff from Office Clerk to Front End Assistant.  (*Id.* ¶ 36.)

At the conclusion of the investigation, Plaintiff alleges that Mr. Shue informed her that she would receive a warning based on what was revealed during the investigation.  (*Id.* ¶ 40.)  Plaintiff also alleges that Mr. Rodenburg suspended Plaintiff for three days after she confronted him about the details of the investigation spreading around the store.  (*Id.*)  Mr. Rodenburg allegedly told Plaintiff that, after the suspension, Costco would "decide whether [she] still ha[d] a job."  (*Id.*)

After the investigation, Dr. Jose E. Gamez diagnosed Plaintiff with PTSD and recommended that she be on leave from December 1, 2020, to February 28, 2021. (*Id.* ¶ 42.) Dr. Gamez pended a letter that asked Costco to accommodate her "in any way possible." (*Id.*) As part of Plaintiff's treatment, she was prescribed to take medication that causes grogginess, dizziness, nausea, and sedation in the late afternoon. (*Id.* ¶ 43.) Plaintiff alleges that, by 7:00 p.m., she "begins to lose energy and cannot function properly." (*Id.* ¶ 43.) Plaintiff took a medical leave of absence after being diagnosed with PTSD, (*id.* ¶ 41), and returned to work on or about February 28, 2021, (*id.* ¶ 44). Plaintiff alleges that her return to work was met with hostility by her superiors. (*Id.* ¶ 44.)

On or about March 1, 2021, Plaintiff provided Costco with Dr. Gamez's letter, which stated that Plaintiff should not work beyond 7:00 p.m. because her PTSD medication causes sedation. (*Id.* ¶ 47.) Mr. Rodenburg immediately denied Plaintiff's request because, as she alleges, he said, "I can't accommodate you because there's seniority and it would seem like preferable treatment." (*Id.* ¶ 48.) After Plaintiff made her request, she alleges that Mr. Rodenburg stated that Costco has "plenty of new employees who could replace you." (*Id.*) Plaintiff then allegedly asserted that she had rights under the ADA, and Mr. Rodenburg responded by asking whether Plaintiff could take her medication at a different time. (*Id.*) Following her conversation with Mr. Rodenburg, she spoke with Mr. Rubanenko, who allegedly stated that she was "already starting problems" after returning from leave and that she could "go back on leave" despite Plaintiff not being entitled to more FMLA leave. (*Id.* ¶ 49.) The next day, Plaintiff emailed Mr. Rodenburg and Mr. She because she was "feeling attacked" and felt discriminated against. (*Id.* ¶ 51.)

On March 3, 2021, Costco allegedly retaliated against Plaintiff by scheduling her to begin work at 7:00–11:00 p.m. (*Id.* ¶ 52.) That day, Costco Payroll Clerk Ginette Navarro stated that Dr. Gamez's doctor's note had not been sent to Costco's payroll department. (*Id.* ¶ 55.) On March

4, 2021, Mr. Rubanenko allegedly told Plaintiff that she "should be lucky we don't fire you." (*Id.* ¶ 56.)

On March 9, 2021, Dr. Gamez provided a "note" indicating that Plaintiff should only work "normal duty" until 7:00 p.m., and on March 10, 2021, Mr. Rodenburg forwarded the accommodation letter to Costco's integrated leave department. (*Id.* ¶ 57.) While a decision was being made regarding Plaintiff's accommodation request, Plaintiff was not scheduled to work. (*Id.* ¶ 58.)

On March 14, 2021, Plaintiff was told that she could come back to work the following week and that her shift would be from 6:00 p.m. to 11:00 p.m. daily due to Plaintiff's lack of seniority. (*Id.* ¶ 59.) Plaintiff alleges that other less-senior employees were scheduled to work during the mornings. (*Id.*) Ultimately, Mr. Rodenburg approved Plaintiff's accommodation request and assigned her to work from 3:00 p.m. to 7:00 p.m. daily. (*Id.* ¶ 62.) Plaintiff alleges that Mr. Rodenburg told her that the accommodation was temporary. (*Id.*) Plaintiff attempted to receive short-term disability for the time Plaintiff was away from work from a company named Unum (a benefit that Costco allegedly provides), but Plaintiff was unable to do so. (*Id.* ¶¶ 60, 63.) Plaintiff alleges that Costco failed to engage in the interactive process concerning her request for an accommodation until July 9, 2021. (*Id.* ¶ 66.)

On April 9, 2021, Plaintiff filed an Equal Employment Opportunity Commission (the "EEOC") charge of discrimination against Defendants (the "EEOC Charge"), (EEOC Charge, Resp. Ex. 1); Charge of Discrimination with the Miami-Dade Commission on Human Rights; and a charge of discrimination with the Florida Commission on Human Relations (the "FCHR"), (Am. Compl. ¶ 67). In the EEOC Charge, Plaintiff alleged that she (1) had been discriminated against based on her sex and disability, (2) was subjected to a hostile work environment, (3) was retaliated against after she complained about sexual harassment, and (4) was retaliated against after Costco

failed to accommodate her disability.  (EEOC Charge 1, 6–11.)  Plaintiff alleges that she was subjected to additional discrimination after filing the EEOC Charge.  (Am. Compl. ¶ 67–98.)

To this end, Plaintiff alleges that she was told by a coworker only identified as "Vance" that Costco was "trying to find anything they can fire you [for]."  (*Id.* ¶ 69.)  That same coworker later informed Plaintiff that Costco "has a secret swingers club."  (*Id.* ¶ 76.)  Plaintiff alleges that "no one would talk to her" starting on or about May 27, 2021.  (*Id.* ¶ 73.)  Plaintiff also alleges that Costco failed to promote her because she filed the EEOC Charge.  (*Id.* ¶¶ 80–84.)

On November 1, 2021, Plaintiff filed an amended charge with the EEOC (the "Amended Charge").  (Am. EEOC Charge, Resp. Ex. 2, ECF No. 24-2.)  The Amended EEOC Charge includes the charges against Defendant found in the EEOC Charge but with the "Other" checkbox ticked text specifying that the alleged discrimination was based on "Hostile Work Environment" and "Retaliatory Hostile Work Environment."  (*Id.* at 1.)  On November 17, 2021, the EEOC issued, at Plaintiff's request, issued a Notice of Right to Sue (the "RTS Letter").  (RTS Letter 1, ECF No. 24-3.)

Plaintiff alleges that Costco threatened to revoke her accommodations, (*id.* ¶¶ 85–90), and that Costco employees continued to make unwanted sexual advances after she filed the EEOC Charge and the Complaint, (*id.* ¶¶ 91–98).  Thereafter, Plaintiff filed the Amended Complaint, (*see generally id.*), and Defendant now moves to dismiss the Amended Complaint, (*see generally id.*).[1]

---

[1]   Plaintiff failed to attach the EEOC Charge, the Amended EEOC Charge, or the RTS Letter to the Amended Complaint, but she attached them in response to the Motion.  (*See* Resp. Ex. 1, ECF No. 24-1.)  While this Court is generally constrained to review the four corners of the Amended Complaint in determining whether to grant a motion to dismiss for failure to state a claim, this Court may consider the documents attached to Plaintiff's response to the Motion because they are "central to [Plaintiff's] claims and is undisputed in terms of authenticity."  *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see also Gombosh v. Univ. of Mia.*, No. 21-23525-CIV, 2022 WL 18584337, at *9 (S.D. Fla. Mar. 8, 2022) ("In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." (quoting *Chesnut v. Ethan Allen*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555.

When ruling on Rule 12(b)(6) motion, a court must "accept the factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff . . . ." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (first citing *Twombly*, 550 U.S. at 570; and then citing *Iqbal*, 556 U.S. at 678).  Courts are, nevertheless, "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (cleaned up).

## III.   DISCUSSION

The Amended Complaint sets forth the following twelve counts against Defendants[2]: one count under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII") for alleged hostile work environment sex discrimination (Count I); one count under the Florida Civil

---

*Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013))).

[2]    Plaintiff names Costco in all counts in the Amended Complaint, but Mr. Rodenburg and Mr. Rubanenko are named as Defendants only in Count XII.

Rights Act, section 760.10(a)(1), Florida Statutes (2022) (the "FCRA"), for alleged hostile work environment sex discrimination (Count II); one count under the Americans with Disabilities Act, 42 U.S.C. § 12203(b) (the "ADA"), for alleged unlawful interference, coercion, or intimidation (Count III); one count under the FCRA for alleged unlawful interference, coercion, or intimidation (Count IV); one count under the ADA for alleged retaliatory hostile work environment discrimination (Count V); one count under the ADA for alleged hostile work environment disability discrimination (Count VI); one count under the FCRA for alleged hostile work environment disability discrimination (Count VII); one count under the ADA for alleged unlawful disparate treatment (Count VIII); one count under the FCRA for alleged unlawful disparate treatment (Count IX); one count under the ADA for alleged failure to accommodate a disability (Count X); one count under the FCRA for alleged failure to accommodate a disability (Count XI); and one count under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) (the "FMLA"), for alleged unlawful retaliation (Count XII). (Am. Compl. ¶¶ 108–417.) Now, Defendants move to dismiss all counts to the extent that Plaintiff failed to exhaust her administrative remedies and dismiss Counts III–VII and X–XII for failure to state a claim. (*See generally* Mot., ECF No. 23.) This Court addresses each argument in turn.

### A.   *Failure to Exhaust Administrative Remedies*

Defendant first argues that Plaintiff's claims are barred to the extent that she failed to adequately exhaust her administrative remedies before filing this action. (Mot. 4–10.) Plaintiff argues in opposition that she did not fail to exhaust her administrative remedies because she received the RTS Letter from the EEOC in connection with the alleged discrimination set forth herein. (Resp. 2–5.)

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject

to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Because exhaustion of administrative of remedies is non-jurisdictional in nature, [this] Court analyzes the Motion under [Rule] 12(b)(6) standards, instead of Rule 12(b)(1)." *Cf. Boger v. A. Gallerani, M.D., PLLC*, 20-21987-CIV, 2020 WL 10142134, at *3 (S.D. Fla. July 20, 2020) (discussing failure to exhaust administrative remedies in connection with a claim under Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

Courts in this Circuit have concluded, considering the remedial purpose of Title VII and similar anti-discrimination laws, certain exceptions apply to the otherwise strict requirement that plaintiffs comply with administrative prerequisites. *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1351–52 (S.D. Fla. 1999). For instance, subsequent discriminatory conduct is reasonably related to an EEOC charge where:

> (1) the subsequent conduct would fall within the reasonably expected scope of the EEOC investigation of the administrative charges; (2) the claim is one alleging retaliation against the employee for filing an EEOC charge; or (3) the plaintiff alleges 'further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Id.* at 1352 (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). In any event, "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate." *Wu*, 863 F.2d at 1547 (quoting *Ray*

*v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)); *accord Booth v. City of Roswell*, 754 F. App'x 834, 836 (11th Cir. 2018) (quoting *Ray*, 626 F.2d at 443). Therefore, different claims of discrimination present distinct theories of recovery from other alleged acts of discrimination. *See, e.g., Madrid v. Helen Homes of Kendall Corp.*, No. 17-cv-7794603, 2017 WL 7794603, at *2 (S.D. Fla. July 17, 2017) (dismissing disparate pay and disparate treatment claims because plaintiff failed to exhaust administrative remedies as to former two theories as they do not grow out of the latter theory); *Nzudu-Andi v. NCO Fin. Sys., Inc.*, No. 09-CV-2138, 2010 WL 11603076, at *6 (N.D. Ga. Apr. 16, 2010) (collecting cases) ("[A] specific claim of discrimination . . . presents a separate and distinct theory of recovery from other alleged acts of . . . discrimination, such as a . . . hostile work environment and disparate treatment.")

    **1.** **INTERFERENCE CLAIMS UNDER THE ADA AND FCRA (COUNTS III AND IV)**

In the Amended EEOC Charge, Plaintiff avers that she was subjected to sex discrimination, disability discrimination, retaliation in connection with her disability, a hostile work environment, and a retaliatory hostile work environment. (Am. EEOC Charge 1.) Nowhere in the Amended EEOC Charge—in which Plaintiff included a fifteen-page detailed statement of facts—did Plaintiff state that Defendants interfered with Plaintiff because she exercised her rights under either the ADA or FCRA. (*See id.* 1–15.)

This Court does not agree with Plaintiff that her interference claims can "reasonably be expected to grow out of" the Amended EEOC Charge's allegations concerning her retaliation claim. *See Madrid*, 2017 WL 7794603, at *2. To be sure, interference and retaliation travel under two separate sections of the ADA. *Compare* § 12203(a) (retaliation)*, with* § 12203(b) (interference). Moreover, the fact that Plaintiff separates her ADA retaliation claim and ADA interference claim is further proof that she knew that both claims travel are materially different.

Therefore, because Plaintiff failed to include interference under the ADA and FCRA as a basis for discrimination in the Amended EEOC Charge, this Court finds that Plaintiff failed to exhaust her administrative remedies in connection to those claims. Accordingly, the Motion, (ECF No. 17), is **GRANTED** in this regard, and Counts III[3] and IV of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE.**

### 2.    REMAINING FCRA CLAIMS (COUNT II AND IX)

The FCRA expressly states that its purpose is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status." § 760.01(2), Fla. Stat. To that end, the Florida Legislature expressly stated that the FCRA must "be liberally construed to further [its] general purposes . . . ." *Id.* § 760.01(3); *see also Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002) ("The statute's stated purpose and statutory construction directive are modeled after Title VII of the Civil Rights Act of 1964. Like Title VII, chapter 760 is remedial and requires a liberal construction to preserve and promote access to the remedy intended by the Legislature. Section 760.01(2) outlines the general purposes of the Act, which include securing freedom from discrimination for all individuals and preserving the general welfare of all." (quoting *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000))).

A claimant alleging a violation of the FCRA must file a complaint with the FCHR within 365 days of the alleged violation. § 760.11(1), Fla. Stat. The FCHR is then required to determine whether "reasonable cause" exists within 180 days. *Id.* § 760.11(3). Section 760.11(3) continues and states that "[w]hen the commission determines *whether or not there is reasonable cause,* the [FCHR] *shall promptly notify the aggrieved person and the respondent of the reasonable cause*

---

[3]    Because this Court dismisses Count III for failure to exhaust administrative remedies, this Court need not address Defendants' remaining arguments in favor of dismissal.

*determination,* the date of such determination, and the options available under this section." *Id.* (emphasis added).

On the one hand, "[i]f the FCHR makes a 'reasonable cause' determination, section 760.11(4) provides the claimant with two options: he or she may (1) bring a civil action or (2) request an administrative hearing." *Woodham,* 829 So. 2d at 894 (citing § 760.11(4), Fla. Stat.). "On the other hand, under section 760.11(7), if the FCHR makes a determination that there is not reasonable cause ('no cause'), the claimant may request an administrative hearing, but must do so within 35 days of the date of the 'no cause' determination." *Id.* (citing § 760.11(7)). If a claimant makes no request within thirty-five days, the request is barred. § 760.011(7). Therefore, "the FCRA differs from Title VII, its federal counterpart, in that a 'no cause' determination precludes a civil suit under the FCRA but not under Title VII." *Woodham,* 829 So. 2d at 895.

Here, Defendant argues that Plaintiff failed to satisfy the administrative preconditions by commencing this action before the FCHR issued a reasonable cause determination. (Mot. 5–6.) Plaintiff argues that she exhausted her administrative remedies because she jointly filed her EEOC Charge alongside her charge filed with the FCHR. (Resp. 4–5.) This Court agrees with Defendant insofar as the pleadings do not show that Plaintiff exhausted her administrative remedies, and the RTS Letter in this action does not excuse Plaintiff from complying with section 760.11's administrative prerequisites. *See Sheridan v. Fla. Dep't of Health,* 182 So. 3d 787, 792 (Fla. 1st DCA 2016) (citing *Ayers v. Wal-Mart Stores, Inc.,* 941 F. Supp. 1163, 1167 (M.D. Fla. 1996)).

While an EEOC right-to-sue letter that expressly states that the EEOC is "unable to conclude" whether a violation occurred is not the equivalent of a reasonable cause determination issued by the FCHR, *see Woodham,* 829 So. 2d at 897 ("We construe the language of section 760.11(7) to require a specific determination *'that there is not reasonable cause'* to believe a violation occurred." (citing § 760.11(7)), the RTS Letter here "did not pass on the validity of the

discrimination charge[s]" alleged by Plaintiff "by making either a cause or no-cause determination[,]" *see Sheridan*, 182 So. 3d at 793. Here, Plaintiff only refers to a FCHR charge she allegedly filed a single time in the Amended Complaint. (*See* Am. Compl. ¶ 16.) In that lone paragraph, Plaintiff alleges that she "dual-filed a charge of discrimination (Charge No. 510-2021-03589) with the [EEOC], the [FCHR], and the Miami-Dade Commission on Human Rights . . . ." (*Id.*) But the EEOC Charge does not include any reference whatsoever to the FCRA. (*See* EEOC Charge.) It was only in the Amended EEOC Charge that Plaintiff included claims under the FCRA. (*See* Am. EEOC Charge.) Of great importance, the Amended EEOC Charge added the FCRA claims to the charge on November 1, 2021, (*id.* at 1–2), and Plaintiff herself requested that the EEOC cease processing the Amended EEOC Charge, (LIS Letter 2 ("This is your Notice of Right to Sue, issued under Title VII, the ADA or [the Genetic Information Nondiscrimination Act] based on the above-numbered charge. *It has been issued at your request.*" (emphasis added)).) As per the LIS Letter, the EEOC terminated its processing of the Amended EEOC Charge, meaning that Plaintiff's FCRA claims were considered for a period of 16 days, and no determination was made. Therefore, Plaintiff cannot claim that she had exhausted the FRCA's administrative prerequisites when no investigation took place. *See Ayers*, 941 F. Supp. at 1167 ("By [the plaintiff's] own request, the investigation of her complaint was terminated prior to the expiration of the 180-day period. The Court will not allow [the plaintiff], by halting her investigation and filing suit before 180 days expired, to circumvent the carefully-crafted procedural requirements set forth under the FCRA."); *see also Wilson v. Collier Cnty.*, No. 21-cv-861, 2022 WL 767715, at *3 (M.D. Fla. Mar. 14, 2022) (dismissing FCRA claims where plaintiff's EEOC right-to-sue letter did not satisfy FCRA's administrative determination requirement and plaintiff failed to sufficiently allege exhaustion). Therefore, this Court rejects Plaintiff's argument that she should be allowed to proceed under section 760.11(8) because, as of today, the FCHR has failed to make a

determination. *See Ayers*, 941 F. Supp. at 1167. This is particularly true considering the Amended Complaint is completely silent as to whether the FCHR conducted *any* investigation into Plaintiff's charge, which is noteworthy considering Plaintiff admits that there is "[n]o indication . . . that the FCHR was involved in [the] administrative phase of this case *in any capacity*." (Resp. 5 (emphasis added).)

Accordingly, the Motion is **GRANTED** in this regard, and Counts II, IV, and IX of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.[4]

**B.** *This Court Will Not Strike Allegations Concerning Constructive or Actual Discharge and Time-Barred Sex-Discrimination Under Title VII and the FCRA*

As Defendants correctly highlight, Plaintiff's response to the Motion fails to respond to Defendants' arguments that (1) Plaintiff failed to sufficiently plead allegations concerning constructive or actual discharge under Title VII or the FCRA, (Mot. 7); and (2) the sex-based discrimination allegations from before June 13, 2020, under Title VII and FCRA were untimely, (Reply 1–2, ECF No. 25). (*See generally* Resp. (failing to address Defendants' arguments).) Therefore, Plaintiff abandoned her allegations related to constructive or actual discharge and sex-based discrimination that occurred before June 13, 2020. *See, e.g.*, *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1357 n.4 (S.D. Fla. 2017) ("When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems

---

[4]    This Court dismisses Plaintiff's FCRA claims without prejudice because it recognizes that the passage of time may cure the "defect of a prematurely filed complaint . . . ." *See Sheridan*, 182 So. 3d at 795. Were Plaintiff's amended pleading to sufficiently plead that, in fact, the FCHR continued to investigate Plaintiff's claim—despite Plaintiff admitting that no such investigation took place, (Resp. 5)—and that the FCHR made, or failed to make, a cause determination—despite Plaintiff's tacit admission that no such determination has been made, (*id.*)—Plaintiff may attempt to replead her FCRA claims. If the FCHR failed to investigate Plaintiff's charge independently from the EEOC (because Plaintiff requested that the EEOC cease its investigation), then Plaintiff cannot replead her FCRA claims. *Cf. Ayers*, 941 F. Supp. at 1167 (granting defendant's motion for summary judgment because plaintiff halted EEOC's investigation into her claims and failed to satisfy FCRA's administrative prerequisites to filing suit).

such claim or argument abandoned." (quoting *Ramsey v. Bd. of Regents of Univ. Sys. of Ga.*, No.

11-CV-3862, 2013 WL 1222492, at *29 (N.D. Ga. Jan. 30), *aff'd,* 543 F. App'x 966 (11th Cir.

2013))).

But, as it relates to the allegations at issue, the Motion is effectively a motion to strike—

and "courts routinely refuse to excise 'in line-item fashion' portions of a complaint where the claim

at hand is otherwise adequately stated. *See Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-

21724, 2020 WL 5517590, at *12 (S.D. Fla. Sept. 14, 2020) (collecting cases); *see also Brooks v.*

*Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("A complaint may

not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since

the court must determine if the allegations provide for relief on *any* possible theory.").  Despite

Plaintiff having abandoned her defenses to the inclusion of these allegations, this Court

nevertheless will not strike the subject allegations from the Amended Complaint "in line-item

fashion" because, as set forth herein, Plaintiff sufficiently pleaded sex-discrimination claims under

Title VII and the FCRA.  *See Havana Docks*, 2020 WL 5517590, at *12; *see also Mansoorian v.*

*Brock & Scott, PLLC*, No. 18-cv-1876, 2018 WL 6413484, at *5 (M.D. Fla. Dec. 6, 2018) (refusing

to strike allegations in line-item fashion even when plaintiff may not be entitled to recover on those

challenged allegations).

Accordingly, the Motion is **DENIED** in this regard.

**C.**     ***Plaintiff Concedes that Counts VI, VII, X, and XI Should be Dismissed***

Defendants next argue that Counts VI, VII, X, and XI should be dismissed because the

Plaintiff failed to sufficiently plead any plausible failure to accommodate claim under the ADA

(Count X) or the FCRA (Count XI) and hostile work environment claims under the ADA (Count

VI) or the FCRA (Count VII).  (Mot. 10–12, 14–16.)  In response to the Motion, Plaintiff expressly

concedes that Counts VI, VII, X, and XI should be dismissed.  (Resp. 1 n.1 ("Plaintiff hereby

dismisses Counts VI–VII, and X–XI, and will file a voluntary dismissal reflecting same.").)  These claims, therefore, are deemed abandoned and should be dismissed.  *See, e.g.*, *Haasbroek*, 286 F. Supp. 3d at 1357 n.4.  This Court notes that Plaintiff did not file a voluntary dismissal reflecting her concessions—but even if Plaintiff had done so, such a voluntary dismissal would have been ineffective: "Rule 41(a)(1), according to its plain text, permits voluntary dismissals only of entire 'actions,' *not claims*."  *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 956 (11th Cir. 2018) (emphasis added).  Nevertheless, the Parties and this Court agree that Counts VI, VII, X, and XI should be dismissed.

Accordingly, the Motion is **GRANTED** in this regard, and Counts VI, VII, X, and XI of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

**D.**   ***Count V is Dismissed Without Prejudice***

Defendants next argue that Plaintiff fails to sufficiently allege a retaliatory hostile work environment claim under the ADA.  (Mot. 16–17.)  Specifically, Defendants argue that the Amended Complaint fails to sufficiently plead a sex-based retaliation claim under the ADA because it neither states that (1) Plaintiff endured sufficiently "severe or pervasive" harassment, nor (2) the alleged harassment was causally connected with Plaintiff's requested (and granted) accommodation.  (*Id.*)  In response, Plaintiff argues that (1) Defendants request that this Court apply the wrong standard for an ADA retaliation claim and (2) she sufficiently pleaded an ADA retaliation claim.  (Resp. 12–14.)

At the outset, this Court agrees with Plaintiff that Defendants invite this Court to review Count V under an incorrect legal standard.  *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  In *Monaghan*, the Eleventh Circuit expressly rejected a district court's application of the "severe or pervasive" standard in light of *Burlington*'s "it well might have dissuaded" standard in ADA

retaliation claim. *Id.* This Court, therefore, looks to whether Plaintiff sufficiently pleaded an ADA retaliation claim through the lens of the Court's "it well might have dissuaded" standard. *See id.*

To state a claim for retaliation under the ADA, Plaintiff must have sufficiently pleaded that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse . . . action; and (3) the adverse action was causally related to the protected expression." *See Shotz v. City of Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003) (quoting *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)). "To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks*, 291 F.3d at 1311–12 (quoting *Little v. United Tech.*, 103 F.3d 956, 960 (11th Cir. 1997)). "To prove a causal connection, [Plaintiff need] only to demonstrate that the protected activity and the adverse action were not wholly unrelated." *See Shotz*, 344 F.3d at 1180 n.30. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000)). "But mere temporal activity, without more, must be 'very close.'" *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In the Eleventh Circuit, "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* (citing *Breeden*, 532 U.S. at 273).

Rejecting Defendants' invitation to apply an incorrect legal standard, this Court looks to the thrust of Defendants' argument: that Plaintiff fails to sufficiently plead but-for causation. (Mot. 16–17.) To this end, Defendants argue that Plaintiff failed to plead that the majority of Plaintiff's coworkers whom Plaintiff alleged to have made discriminatory or otherwise inappropriate statements knew about Plaintiff's requested (and granted) accommodation. (*Id.* 16.) While

Plaintiff alleges that "at least a half-dozen of [her] coworkers began approaching [her] about advise [sic] regarding FMLA and health issues and what they needed to obtain an accommodation[,]" (Am. Compl. ¶ 188), such an allegation is insufficient to support a retaliation claim because Plaintiff does not allege that any of those unnamed individuals subjected Plaintiff to retaliatory harassment because they knew of her accommodation, the EEOC Charge, the Amended EEOC Charge, or the Complaint. *See Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020) ("As a starting point for any retaliation claim, a plaintiff needs to show (among other things) that *the decisionmaker* actually knew about the employee's protected expression." (emphasis added) (citing *Brungart*, 231 F.3d at 799)).

The only employee this Court may infer is a "decisionmaker" for the purposes of this Order is Plaintiff's "immediate supervisor" and "Front end manager, Hannah . . . ." (*See* Am. Compl. ¶ 219.) But Plaintiff does not plead that "Hannah" knew about her accommodation—in fact, what Plaintiff alleges, that "Hannah insisted on not allowing [Plaintiff] to take her medication," indicates that "Hannah" did *not* know about Plaintiff's accommodation. (*See id.*) In any event, the alleged incident with "Hannah" took place on December 14, 2021, well over three months after Plaintiff's request for an accommodation was ultimately granted, which does not allow Plaintiff to enjoy an inference of causation. *See Martin*, 959 F.3d at 1053 ("In short, if [the decisionmaker] did not know about [the plaintiff's] discrimination complaints, he could not have fired her because of them."). Indeed, the only decisionmakers Plaintiff alleges knew about Plaintiff's accommodation were Mr. Rodenburg, (*e.g.*, Am. Compl. ¶ 57); Mr. Rubanenko, (*e.g.*, *id.* ¶ 56); Ms. Frazier, Costco's Accommodation Specialist, (*id.* ¶ 89); and Ms. Hamel-Rieken, Costco's Integrated Leave and Accommodations Specialist, (*id.*). But Plaintiff has failed to plead that any of these decisionmakers' actions were sufficiently retaliatory to the extent that their actions "well might have dissuaded [her] from making or supporting a charge of discrimination." *See Monaghan*, 955

F.3d at 863 (quoting *Burlington*, 548 U.S. at 68).

Further, Plaintiff fails to plead sufficient facts from which this Court may infer causation due to the temporal proximity of the allegedly retaliatory action and Plaintiff's request for an accommodation. *See Hill v. Miami-Dade Cnty. Sch. Bd.*, 21-20129-Civ, 2021 WL 1648225, at *3 (S.D. Fla. Apr. 27, 2021) (granting defendant's motion to dismiss plaintiff's retaliation claim because, among other things, plaintiff was terminated three months after request for accommodation). Any allegedly retaliatory conduct Plaintiff describes in the Amended Complaint occurred outside of three months from her accommodation request, which—without more—"is insufficient to support a claim for retaliation under the ADA . . . ." *See id.* at *4. Plaintiff's allegations that Mr. Rodenburg and Mr. Rubanenko allegedly threatened Plaintiff's job are also unavailing. In this Circuit, "a threat of termination, without more, is not a 'materially adverse' employment action." *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021) (quoting *Burlington*, 548 U.S. at 68).

Therefore, this Court finds that Plaintiff failed to sufficiently plead but-for causation regarding her ADA retaliation claim. Accordingly, the Motion is **GRANTED** in this regard, and Count V of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

### E.     *Count XII is Dismissed Without Prejudice*

Last, Defendants argue that Count XII should be dismissed because Plaintiff did not allege that Defendants either denied Plaintiff FMLA leave or took any adverse employment action as a result of Plaintiff having taken or applied for FMLA leave. (Mot. 17–19.) Plaintiff argues that she sufficiently pleaded an FMLA retaliation claim because she suffered financial losses because she requested FMLA leave. (Resp. 15.) Specifically, Plaintiff states that she (1) never received short-term disability compensation to which she was allegedly entitled because Mr. Rodenburg withheld documentation from the insurer, (*id.*), and (2) was unable to work between March 9 and

March 21, 2021, while Costco was determining whether to grant Plaintiff's requested accommodation, (*id.* at 15–16). Moreover, Plaintiff alleges that Mr. Rubanenko threatened Plaintiff's employment and was the one responsible for Plaintiff missing work from March 9 to March 21. (*Id.* at 15.)

Although the FMLA does not expressly distinguish an interference claim from a retaliation claim, courts in the Eleventh Circuit use the labels "interference" and "retaliation" to designate the two prohibited acts under § 2615(a). *See Ramos v. Univ. of Mia.*, 21-cv-22151, 2021 WL 4949160, at *2 (S.D. Fla. Oct. 25, 2021) (citing *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 n.9 (11th Cir. 2001)). To state a claim for FMLA retaliation under § 2615(a)(2), Plaintiff must sufficiently plead that: (1) the employee engaged in a statutorily protected activity; (2) the employee suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *See Parris v. Mia. Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000). Further, to state a retaliation claim, Plaintiff must plead that her "employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1268–69 (11th Cir. 2008) (citing *Strickland*, 239 F.3d at 1207).

Here, this Court finds that Plaintiff failed to sufficiently plead a retaliation claim under the FMLA. Preliminarily, there is no question that Plaintiff sufficiently pleaded that she was "engaged in a statutorily protected activity" because Plaintiff alleged that she worked the requisite 1,250 hours during her previous twelve months of employment with Costco and requested and took leave under the FMLA. (*See* Am. Compl. ¶¶ 11, 41, 295–96); *see Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) ("[The FMLA] provide[s] protection against retaliation for exercising or attempting to exercise [FMLA] rights . . . ."). But the Amended Complaint contains no allegations that Plaintiff either suffered an adverse employment decision.

Plaintiff argues that she sufficiently pleaded allegations concerning two actions that exceed

the "well-might have dissuaded" standard as those actions allegedly caused Plaintiff to suffer "financial losses because she requested FMLA leave[,]" (Resp. 15): (1) that Mr. Rodenburg withheld documentation from Unum, a short-term disability provider, which meant that Plaintiff did not receive payment "for taking leave in addition to her unpaid FMLA leave[,]" (Am. Compl. ¶¶ 60, 63); and (2) that Mr. Rodenburg and Mr. Rubanenko "threatened [Plaintiff's] employment upon her return from FMLA leave and prevented [her] from working her shifts until March 26, 2021[,]" (Resp. 15 (citing Am. Compl. ¶ 58)).

As to the first allegedly retaliatory action, Plaintiff does not actually plead that Mr. Rodenburg gave Unum the wrong email address or otherwise withheld documentation. (*See* Am. Compl. ¶ 60.)   Rather, what the Amended Complaint states is "[t]he *Unum representative* explained that she was given the incorrect email address." (*Id.*)   Plaintiff does not plead that Mr. Rodenburg gave the Unum representative *any* email address or other necessary documentation or information necessary for Unum to process Plaintiff's short-term disability claim.   Such allegations fail to state a FMLA retaliation claim against Mr. Rodenburg.   As to the second allegedly retaliatory action, Plaintiff argues that she sufficiently pleaded that Mr. Rodenburg and Mr. Rubanenko "threatened" her employment after returning from her FMLA leave by "refus[ing] to allow Plaintiff to work." (Am. Compl. ¶ 58.)   But Plaintiff also pleaded that she insisted that she "must not work beyond 7 P.M. because her PTSD medication made her drowsy, groggy, and driving home at such a time would be unsafe." (*Id.* ¶ 305.)   While Plaintiff pleads that Costco initially scheduled her to shifts that extended beyond 7:00 p.m. that Mr. Rodenburg "refused to accommodate Plaintiff because he claimed other employees had seniority for accommodations[,]" (Am. Compl. ¶ 308), refusing to accommodate an employee, without more, is not sufficient to plead retaliation under the FMLA. *See McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1207 (S.D. Ala. 2018) ("An employer's response of 'no' or absolutely not' or even 'do your job or quit' cannot

meet the legal threshold of an 'adverse employment action' because it would not dissuade a reasonable employee from [engaging in a protected activity].").  In any event, Plaintiff alleges that she was granted her requested accommodation within one month after her request.  (Am. Compl. ¶ 311.)  Indeed, Plaintiff agreed in response to the Motion that dismissal was appropriate as to her failure to accommodate claims (Counts X and XI).  (*See supra* Part III.C.)  Therefore, as Defendants argue, Plaintiff's FMLA retaliation claim "appears to be little more than that Costco engaged in the interactive process as set forth in the ADA's regulations . . . ." (Mot. 18 (citing 29 C.F.R. § 1630.2(o)(3).)

Taken together, as pleaded, the Amended Complaint fails to state a cause of action under the FMLA for retaliation against Defendants.  Accordingly, the Motion is **GRANTED** in this respect, and Count XII of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      The Motion, (ECF No. 17), is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2.      Counts II, III, IV, V, VI, VII, IX, X, XI, and XII of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

3.      If Plaintiff so chooses, she has **until and including Monday, April 3, 2023**, to file a second amended complaint that addresses the deficiencies set forth herein.  **Plaintiff's failure to do so will result in dismissal without prejudice and without further warning.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14 day of March, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

21